IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JOSHUA ADAM KEEN, | ) |
| | ) |
| Plaintiff, | )   Civil Action No. 7:20cv00693 |
| | ) |
| v. | )   **MEMORANDUM OPINION** |
| | ) |
| CPT. JOSH HAYES, *et al.*, | )   By:   Hon. Thomas T. Cullen |
| | )          United States District Judge |
| Defendants. | ) |

Joshua Adam Keen, a Virginia inmate proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983 against staff at the Southwest Virginia Regional Jail Authority's Duffield and Haysi, Virginia facilities ("Duffield" and "Haysi," respectively). Keen alleges that the defendants failed to protect him and interfered with his access to the courts while he was housed at Duffield. The named defendants have moved to dismiss Keen's third amended complaint against them. The court has reviewed the pleadings and will grant the defendants' motion and dismiss Keen's claims without prejudice.[1] The court will also *sua sponte* dismiss Keen's claims against defendants "Unnamed Responding Hallway Officers 9/9/20" and

---

[1] By Memorandum Opinion and Orders entered August 11, 2022, and March 31, 2023, the court granted the defendants' motions to dismiss and dismissed Keen's second amended complaint without prejudice after concluding that Keen's allegations failed to state any viable § 1983 claim against the defendants. (ECF Nos. 116, 117, 139, & 140.) In the March 31, 2023 Memorandum Opinion, the court noted that, in Keen's responses to the defendants' motions to dismiss and his other submissions to the court, Keen provided additional facts in support of his claims and also identified further discovery he would need to better describe his claims against each defendant. The court construed his submissions as motions to supplement his complaint but denied the motions due to Keen's attempts to construct his complaint piecemeal in violation of Rules 8 and 10 of the Federal Rules of Civil Procedure. But because Keen could allege facts that state a viable § 1983 claim, the court allowed him to file a third amended complaint that would "replace all of Keen's previous complaints and proposed supplements thereto and shall constitute the sole complaint." (ECF No. 139 at 8.) Keen filed a third amended complaint, and it is now the only operative complaint. (*See* ECF No. 141.)

"Unnamed Officer 9/25/20" without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.

## I.

### A. Failure to Protect Allegations

In his third amended complaint, Keen summarily alleges that on September 8, 2020, defendants Officer Duncan from Duffield and Cpl. Stepp from Haysi "conspired" to place Keen in the Special Housing Unit ("SHU") at Duffield instead of following policy and assigning him to a housing unit with "similarly classified inmates." (3d Am. Compl. at 3–4 [ECF No. 141].) Keen concludes that Officer Duncan "knew from history"[2] that Keen "would be assaulted and would suffer serious bodily harm" in the SHU, and Keen's placement there set up the incident" that happened the next day. (*Id.* at 3.) Keen does not describe the housing unit he believes he should have been assigned to, and he later notes that his assignment in the SHU pod was also "administrative segregation." (ECF No. 1471- at 2.)

Despite his third amended complaint being his fourth "bite at the apple," Keen does not explicitly allege that he was attacked by other inmates. Instead, without context Keen states that on September 9, 2020, while working in "master control,"[3] defendant Cpl. Delano "intentionally failed to act when she knew and disregarded that [Keen] was in risk of serious harm." (3d Am. Compl. at 4.) Keen argues that Cpl. Delano "intentionally h[i]ndered the responding officer's access to the 'SHU'" because the "first call went out and the officers

---

[2] It is unclear from the complaint to which "history" Keen is referring. Keen does not allege that he had any prior interaction with Officer Duncan.

[3] "Master control" appears to refer to the room where officers are able to remotely unlock doors and monitor security within the pods and surrounding areas.

responded before [the] fight," but they "waited in the hallway until after the ass[a]ult" and Cpl. Delano "allow[ed]" them to enter approximately five minutes after they responded. (*Id.* at 4.)

Keen claims that defendants Hamilton, Hall, Edmonds, and "Unnamed Responding Hallway Officers 9/9/20," along with several named non-defendant officers, "responded" to the SHU pod, but waited approximately five minutes before entering and, in doing so, "failed to intervene with ass[a]ult [(*sic*)] and just stood by and watched [Keen] being seriously harmed at the hands of inmates with a violent history in a particularly violent environment for inmates with charges such as [Keen's]." (*Id.* at 6.) Keen does not allege that these defendants could have entered the SHU pod without someone from the control room unlocking the pod door to let them in. Keen argues that "all" of the officers were "deliberately indifferent when they failed in their official duty to protect [Keen's] safety and recklessly allowed serious bodily injuries to [Keen]." (*Id.*) Keen also speculates that defendant maintenance worker Kilgore "failed to take appropriate precautions while working on locks which [may have] caused doors to open, result[ing] in significant injuries to [Keen]." (*Id.*) Keen provides no context to explain his allegation against Kilgore. In a cover letter submitted with his third amended complaint, Keen alleges that as a result of the September 9, 2020 "incident," he sustained a "post-concussion contusion, mem[ory] issues, e[tc].," as well as "short term injuries" to his "ribs, eye, head, e[tc]." (ECF No. 141-2.)

Keen claims that through incident reports of events involving other inmates, Cpt. Hayes "had actual knowledge" that the SHU was "a particularly violent environment and when considered in the totality of these events," and his "awareness constitutes deliberate indifference as he failed to take reasonable preventative measures in his official duties to

protect [Keen's] safety and allowed [him] to recklessly be put in sufficient serious danger at the hands of repetitively violent inmates resulting in the sustained injuries… and continued to house [him] with them [un]til weeks after… without the attacking inmates being disciplined."[4] (3d Am. Compl. at 4–5.) Keen claims that unidentified "staff and management" went "against policy and allow[ed] the custom of violence to go unchecked and unpunished" and they did not take "reasonable measures to ensure the violence in the 'SHU' is stopped so that serious injuries, such as [Keen's,] will not continue to happen." (*Id.* at 6.) He also complains that "maintenance workers" are allowed "free reign of [the] jail, unattended." (*Id.*)

Keen asserts that defendant Clear was "aware of all violent issues and the ongoing problems and he deliberately refuse[d] to take reasonable measures such as training to stop violence in the 'SHU' and continue[d] to allow policy to be ignored which allowed the physical injuries to [Keen] at the hands of violent inmates." (*Id.*)

In response to the defendants' motion to dismiss his third amended complaint, Keen alleges, in conclusory fashion, that the "defendants knew subjectively, [that his] condi[]tions presented a substantial risk of serious harm, failed to take reasonable measures to prevent it, but allowed it to happen and made a spectacle of watching in the hallway." (ECF No. 147-1 at 2.) Keen believes that the "whole incident was orchestrated." (*Id.*) Keen does not allege that he previously had any issues or safety concerns at Duffield or that he had any prior interactions with any of the other inmates at Duffield.

---

[4] Keen does not allege that he had any safety or security issues after the September 9, 2020 "incident."

### B. Access to Courts Allegations

Keen also alleges that on September 25, 2020, he gave defendant Counselor Starnes "legal documents/evidence to make copies," and she "subsequently deprived [him] of those irreplaceable necessary tools to substantiate [his] criminal case as well as frustrated [his] ability to success[ful]ly pursue this case." (3d Am. Compl. at 3.) Keen claims that Cpt. Hayes and Lt. Gullet "knew" about the missing legal documents/evidence, "what [they were,] and how the deprivation of [the documents] would seriously injure" his ability to "prepare, receive, and pursue fair criminal and civil trials" and each of these defendants "stood by" and failed to "take reasonable measures to relocate and return them."[5] (*Id.* at 5.)

In response to the defendants' motion to dismiss, Keen states that his "missing legal documents and evidence" "hamper[ed his] ability to prove [his] innocence and prepare for trial," "deprive[d] him of due process and the right to a fair trial," and "damaged [his] right to call for evidence in [his] favor." (ECF No. 147 at 1–2.) Keen does not identify the contents of his alleged missing documents or evidence.

### II.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94

---

[5] Keen makes no allegation against defendant "Unnamed Officer 9/25/20" in his third amended complaint.

(2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *Id.*; *see Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

To allow for the development of a potentially meritorious claim, federal courts have an obligation to construe *pro se* pleadings liberally. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982). Moreover, "liberal construction of the pleadings is particularly appropriate where . . . there is a *pro se* complaint raising civil rights issues." *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *see also Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that

state a cause of action." *Scarborough v. Frederick Cnty. Sch. Bd.*, 517 F. Supp. 3d 569, 575 (W.D. Va. Feb. 8, 2021) (quoting *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999)).

## III.

Keen's allegations that the defendants failed to protect him, as set out in his third amended complaint, are far too vague and conclusory to state a colorable § 1983 claim. The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This prohibition "imposes duties on [prison] officials, who must provide humane conditions of confinement [and] 'take reasonable measures to guarantee the safety of the [prison's] inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). "In particular, . . . prison officials have a duty . . . . to protect prisoners from violence at the hands of other prisoners." *Id.* (internal quotation marks and citation omitted).

To state a failure-to-protect claim under the Eighth Amendment, an inmate must allege facts sufficient to satisfy two elements. First, the inmate must establish that he suffered "a serious deprivation of his rights in the form of a 'serious or significant physical or emotional injury.'" *Danser v. Stansberry*, 772 F.3d 340, 346 (4th Cir. 2014) (quoting *Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 723 (4th Cir. 2010)). Second, the inmate must show that the prison official had a "sufficiently culpable state of mind," which, in this context, means that the official acted with "deliberate indifference to inmate health or safety." *Id.* at 346–47 (quoting *Farmer*, 511 U.S. at 834).

Deliberate indifference is "a very high standard" that cannot be met by a showing of "mere negligence." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). "A plaintiff establishes

'deliberate indifference' by showing that the prison official 'kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.'" *Danser*, 772 F.3d at 346 (quoting *Farmer*, 511 U.S. at 837). Importantly, "the official 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting *Farmer*, 511 U.S. at 837). "It not enough that [officials] should have recognized it; they actually must have perceived the risk." *Parrish v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004). "Thus, 'an official's failure to alleviate a significant risk that he should have perceived but did not' will not give rise to a claim under the Eighth Amendment." *Danser*, 772 F.3d at 347 (quoting *Farmer*, 511 U.S. at 838).

Here, Keen summarily argues that the defendants knew that the SHU pod was a "violent" place, "conspired," "intentionally failed to act," "intentionally hindered" others from acting, "stood by and watched," failed to intervene," and recklessly allowed Keen to be injured. (3d Am. Compl. at 3–6.) Keen's conclusory assertions are insufficient to establish that any of the defendants knew of or disregarded an excessive risk to Keen's health or safety. Bare allegations devoid of factual enhancement are insufficient to state a claim for relief under § 1983. *See Iqbal*, 556 U.S. at 678. Accordingly, the court will grant the defendants' motions to dismiss Keen's claims based on a failure-to-protect theory in his third amended complaint.[6]

---

[6] To the extent Keen alleges that any of the defendants are liable as supervisors, his allegations also fail to state a viable § 1983 claim. It is well established that a supervisory government official cannot be held liable under § 1983 for the actions of his subordinates solely on the basis of *respondeat superior*. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–92 (1978). Nonetheless, a supervisory official may be liable for his subordinate's acts if the supervisor himself bears personal responsibility for those acts. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "Liability in this context is not premised on *respondeat superior*, but on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984).

To prevail on a claim for supervisory liability, a plaintiff must show:

> (1) that the supervisor had actual or constructive knowledge that [his] subordinate was engaged in conduct that posed "a pervasive and

In addition—and for the same reasons—the court will *sua sponte* dismiss Keen's failure to protect claims against "Unnamed Responding Hallway Officers 9/9/20" without prejudice under § 1915(e)(2)(B)(ii) for failure to state a claim.

## IV.

Keen's allegations that the defendants denied him access to courts also fail to state a cognizable § 1983 claim.

The Due Process Clause of the Fourteenth Amendment guarantees prisoners the right to access the courts. *Pink v. Lester*, 52 F.3d 73, 76 (4th Cir. 1995). To state such a claim, the inmate must allege that he suffered an adverse consequence resulting from the interference.

---

unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)). Establishing a "pervasive" and "unreasonable" risk of harm under the first element requires evidence that the conduct is widespread, or at least has been used on several different occasions, and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury. *Slakan*, 737 F.2d at 373−74. A plaintiff may establish deliberate indifference by demonstrating a supervisor's "continued inaction in the face of documented widespread abuses." *Id.* at 373. Overall, "[t]he plaintiff . . . assumes a heavy burden of proof in supervisory liability cases," for "[h]e must not only demonstrate that the prisoners face a pervasive and unreasonable risk of harm from some specified source, but he must show that the supervisor's corrective inaction amounts to deliberate indifference or 'tacit authorization of the offensive [practices].'" *Id.* at 372 (quoting *Orpiano v. Johnson*, 632 F.2d 1096, 1101 (4th Cir. 1980)) (alteration in original). "[H]e cannot satisfy [this] burden of proof by pointing to a single incident or isolated incidents." *Id.*

Here, Keen's allegations are far too vague and conclusory to establish the *Shaw* elements against any of the defendants. Furthermore, to the extent that Keen seeks to pursue this action against the Jail Authority, his allegations once again fail to state a claim. "Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 690 (1978). Thus, a governmental entity, such as a regional jail authority, is liable under § 1983 only when the entity itself is a "moving force" behind the deprivation. *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981). That is, the entity's official policy or custom must have played a part in the alleged violation of federal law. *Oklahoma City v. Tuttle*, 471 U.S. 808, 817-18 (1985). Here, Keen does not identify any official policy or custom *of the Jail Authority* that was the moving force behind the alleged incident. Accordingly, his allegations fail to state a viable § 1983 claim.

*Rountree v. Clarke*, No. 7:11cv572, 2015 U.S. Dist. LEXIS 28511, at *10 (W.D. Va. Mar. 9, 2015) (citing *White v. White*, 886 F.2d 721, 724 (4th Cir. 1989)). An adverse consequence—also referred to as "actual injury"—occurs when the plaintiff's "nonfrivolous claim" is frustrated or impeded by the deprivation of the necessary tools to pursue that claim. *Lewis v. Casey*, 518 U.S. 343, 351 (1996); *Christopher v. Harbury*, 536 U.S. 403, 415–16 (2002). Mere negligent actions that interfere with an inmate's litigation efforts are not actionable. *Pink*, 52 F.3d at 75–76.

Here, despite multiple opportunities to amend his complaint, Keen still fails to allege that he suffered any specific and actual injury as a result of the loss of his paperwork, and he fails to identify what "non-frivolous claims" were frustrated by the loss. *See Rountree*, 2015 U.S. Dist. LEXIS 28511, at *12–13. Accordingly, the court will grant the defendants' motion to dismiss the third amended complaint as to Keen's access-to-courts claims. For the same reasons and also because Keen alleges no facts against him/her, the court will *sua sponte* dismiss Keen's access to courts claim against "Unnamed Officer 9/25/20" without prejudice under § 1915(e)(2)(B)(ii) for failure to state a claim.

## V.

Keen also submitted 61 pages of "Additional Evidence" after the defendants filed their motion to dismiss. (ECF No. 148.) In the submission, Keen includes an incident review of the SHU on September 9, 2020, facility audit and shift logs, shift rosters, a report of an investigation of the incident, a letter written by Keen to correctional staff, incident reports, pod logs, grievances, inmate requests, and medical records. While Keen submits the documents as "evidence," he does not provide any narrative to explain their relevance to his claims. Some of the "evidence" provides additional context for his allegations, but some of

the documents provide no support for his claims or cannot be interpreted without any additional narrative or context provided.

The court previously warned Keen that he could not construct his complaint piecemeal and that he could not amend his complaint in response to a motion to dismiss without a motion to amend or supplement. (ECF No. 139 at 7 & n.4.)[7] Keen has filed no such motion in this case. Accordingly, the court has not considered the submissions of "additional evidence" in adjudicating the defendants' motion to dismiss. But even if the court were to consider the "additional evidence," it would not change the court's decision as to either of his claims.[8]

### A. Failure to protect "evidence"

In the incident review issued by Cpt. Hayes, Chief of Security, on September 15, 2020, it notes that on September 9, 2020, at 5:04 p.m., "all the cell door locks in the SHU began to cycle open unattended," and "Keen was assaulted by two other inmates after the doors were unsecured." (ECF No. 148 at 2.) Based on Cpt. Hayes' "review of the incident," "the door locks experienced some type of mechanical failure," and "no Officers were present in the control room or [the SHU pod] at the time of the incident." (*Id.*) A timeline shows that, at 4:58 p.m., Officer Hamilton had completed his security check and "[a]ll doors appear[ed] secure." (*Id.*) Officer Hamilton exited the SHU pod at 5:00 p.m., went to the control room,

---

[7] *See also Marsh v. Virginia Dep't of Transp.*, No. 6:14cv6, 2014 U.S. Dist. LEXIS 167333, 2014 WL 6833927, at *8 (W.D. Va. Dec. 3, 2014) (collecting cases) ("It is axiomatic that the complaint may not be amended, without a motion to amend or supplement, by the briefs in opposition to a motion to dismiss. To hold otherwise would mean that a party could unilaterally amend a complaint at will, even without filing an amendment, and simply by raising a point in a brief.").

[8] The court has reviewed the documents and culled the relevant facts that provide context to Keen's claims.

and then exited the control room at 5:02 p.m. When Officer Hamilton exited the control room, maintenance worker Kilgore entered it. At 5:04 p.m., inmates exited their cells in the bottom tier of the pod. At 5:05 p.m., nine inmates, including Keen (who was in a top tier cell), exited their cells. At 5:06 p.m., Kilgore exited the control room and at 5:08 p.m., he is seen "trying to get the Officers attention" in another pod, and then tells Officers in the hallway near another pod about the inmates being out of their cells in the SHU pod. At 5:10 p.m., two inmates assault Keen; one minute later, at 5:11 p.m., the two inmates leave Keen, return downstairs, and Keen "appears to secure his cell door." (*Id.* at 3) At 5:13 p.m., three minutes after Keen is assaulted, officers enter the SHU pod and all inmates are secured in their cells.

In the report of the investigation of the incident, issued September 16, 2020, Cpt. Hayes states that the incident on September 9, 2020, resulted in two inmates being assaulted by three other inmates. (*See* ECF No. 148 at 6.) Hayes states that, "[w]hile reviewing the camera footage and speaking with staff, it was determined the doors in [the SHU] pod cycled open unattended . . . . [a]llowing the inmates to exit their cells." The report further states:

> On September 9, 2020 at [5:04 p.m.] the cells in [the SHU pod] began to open by the inmates pushing on the doors. At approximately the same time[,] maintenance staff had turned a breaker back on to the doors on the top tier of the pod. [Two inmates] exited their cells and assaulted [another inmate] when [he] opened his cell door. Approximately five minutes later [two inmates] go upstairs where inmate [] Keen is standing outside his cell [and they] assault inmate Keen. [The assaulting inmates] then go back downstairs and inmate Keen appears to secure his cell door. At [5:13 p.m.,] multiple Officers enter the dayroom and all inmates are secured back in their cells. When speaking with Officers involved[, the other assaulted inmate] and Keen were asked if [they] wished to see medical. [The other assaulted inmate] was escorted to medical where he was seen by the Nurse. Inmate Keen refused medical attention.

> Officers A[.] Hall, T[.] Lane, and B[.] Hamilton were assigned to work Max housing at the time of the incident. At the time of the incident Officers A. Hall and Lane were in [another] pod assisting the nurse with pill pass. Officer Hamilton was in medical. The Officers were alerted by maintenance staff that the inmates were out of their cells in [the SHU] pod.
>
> Since the date of the incident, we have experienced no further issues with the cell doors in [the SHU] pod.

(*Id.*)

In the incident reports, Officer Edmonds states that at the time of the incident, he "responded to radio traffic from SHU stating several inmates were out of their cells" and that, upon arrival at the pod, he and two other officers went upstairs to check on the top tier inmates. (ECF No. 148 at 8.) Officer A. Hall reports that he was "doing evening pill pass" with Officer Lane and a nurse when Officer L. Hall radioed that there were several inmates out in the SHU pod. (*Id.*) Upon arrival at the pod, he locked down and secured all doors on the bottom tier. Officer L. Hall reports that he was entering another pod when maintenance worker Kilgore "asked if inmates were supposed to be out" in the SHU pod. (*Id.*) L. Hall went to the SHU pod and noticed that multiple inmates were standing out in the dayroom and doors were standing open. He "radioed to max housing that all of the inmates in [SHU] were out," multiple officers responded, and inmates were locked back in their cells and all doors were secured. (*Id.*) Lt. Hounshell reports that on September 9, 2020, "the door locks in SHU had some kind of malfunction that open[ed] all the cell doors at one time. All the inmates came out of their cells and a couple had altercations," "maintenance checked the electrical aspect of the locks and count not find a problem," "the computer and cameras for [SHU] had been giving a problem by going off and having to be logged back on," but "IT was notified as to

- 13 -

the problem." (*Id.*) Cpl. Barber reports that he responded to the SHU pod after hearing radio traffic that inmates had gotten out of their cells after lockdown. Cpl. Barber states that he entered the pod with other officers and began verbally telling the inmates to lockdown. He reports that the housing unit was "locked down without further incident." (*Id.* at 9.) Maintenance worker Kilgore reports that he went to the Max control room to turn breakers back on to the doors that they had "previously worked on" and, after turning them back on, he left the control room and "headed back to the shop." (*Id.*) Kilgore states that while he was passing the SHU pod, he noticed several inmates out in the dayroom. Because "no one was in the control room," Kilgore notes that he looked for an officer to tell and ultimately was able to alert two officers who were passing by another pod. (*Id.*) Kilgore reports that the next morning, on September 10th, he and another maintenance worker "went back and checked to make sure that turning the breakers back on didn't release the doors and it didn't." (*Id.*)

Although the additional evidence establishes that Keen was assaulted by two other inmates on September 9, 2020, it also serves to support a conclusion that none of the defendants were deliberately indifferent to a serious risk of harm. The evidence suggests that Keen has been placed in SHU and administrative segregation housing; at the time of the incident, there was a mechanical failure that resulted in cell doors unlocking after they had been secured for lockdown; that no officers were in the SHU pod or the control room at the time Keen was assaulted; the assault on Keen lasted approximately one minute; and the officers responded to the SHU pod as soon as they were notified of the security breach and entered the pod to re-secure the pod without incident. Keen does not allege that any defendant knew that the cell doors would experience a mechanical failure that would unlock all the SHU

cell doors while no staff were present. Even if the court considers the additional evidence, the court cannot conclude that Keen has sufficiently alleged that any of the defendants were deliberately indifferent to a serious risk of harm.

### B. Access to courts "evidence"

In a grievance form submitted with the additional evidence, Keen complains that his legal documents and evidence that was lost by staff "included motions and evidence and no other copies exist." (*Id.* at 49.) He also asserts that the documents were "vital to a court case" and "time sensitive." (*Id.* at 49 & 51.) Keen's additional evidence still does not point to any specific and actual injury he suffered as a result of the loss of his paperwork and still fails to identify what "non-frivolous claims" were frustrated by the lost paperwork. As such, even with the additional evidence, his allegations fail to state a viable § 1983 claim.

### VI.

For the reasons stated, the court will grant the defendants' motion to dismiss and dismiss the claims in the third amended complaint against them without prejudice. The court will also *sua sponte* dismiss Keen's claims against defendants "Unnamed Responding Hallway Officers 9/9/20" and "Unnamed Officer 9/25/20" without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.

The court notes that , while it may be possible for Keen to state a viable claim for relief against one or more of the defendants, the court has repeatedly given him opportunities to do that and he still has not adequately stated a viable § 1983 claim against a named defendant. As such, the court will dismiss this action without prejudice to Keen's opportunity to file a fourth amended complaint. To be considered by the court, Keen must file a motion to reopen the

case along with the proposed fourth amended complaint. The proposed complaint must stand alone, without reference to or reliance on any previously filed complaint, amendment, additional evidence, or other document. The proposed complaint must comply with the Federal Rules of Civil Procedure, must clearly identify each defendant and each claim against each defendant, and must provide all of the facts that Keen wants the court to consider against each defendant. Any motion and proposed fourth amended complaint filed must be filed within 30 days and the court will screen any proposed complaint under 28 U.S.C. § 1915(e)(2)(B) before directing any defendant to respond.

The clerk shall send copies of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 29th day of March, 2024.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE