CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
March 24, 2025
LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JOSHUA ADAM KEEN, | ) |
| Plaintiff, | ) Case No. 7:20-cv-00693 |
| v. | ) **MEMORANDUM OPINION** |
| CPT. JOSH HAYES *et al.*, | ) By: Hon. Thomas T. Cullen |
| Defendants. | ) United States District Judge |

Before the court is Plaintiff's motion to reopen the case and for leave to amend his complaint. (ECF No. 170.) For the following reasons, Plaintiff's motion will be denied.

### I.

Plaintiff Joshua Adam Keen, a Virginia inmate proceeding *pro se*, filed this action under 42 U.S.C. § 1983 against various employees of the Southwest Virginia Regional Jail Authority at Duffield and Haysi ("Duffield" and "Haysi," respectively), complaining Defendants failed to protect him and interfered with his access to courts.

On March 29, 2024, the court granted the named Defendants' motion to dismiss Plaintiff's third amended complaint, *sua sponte* dismissed Plaintiff's claims against the unnamed Defendants, and directed the Clerk to strike this action from the court's active docket. (*See* Order, Mar. 29, 2024 [ECF No. 162].) In its prior opinion, the court explained that Plaintiff failed to state plausible § 1983 claims based on Defendants' alleged failure to protect because Plaintiff's "conclusory assertions [were] insufficient to establish that any of the defendants knew of or disregarded an excessive risk to Keen's health or safety." (Mem. Op., Mar. 29, 2024, at 7–9 [ECF No. 161].) The court also explained that Plaintiff had not stated a cognizable

claim based on Defendants' alleged denial of his access to courts since, "despite multiple opportunities to amend his complaint, Keen still fail[ed] to allege that he suffered any specific and actual injury as a result of the loss of his paperwork, and he fail[ed] to identify what 'non-frivolous claims' were frustrated by the loss." (*Id.* at 9–10.)

In its opinion, the court noted that, "while it may be possible for Keen to state a viable claim for relief against one or more of the defendants, the court has repeatedly given him opportunities to do that and he still has not adequately stated a viable § 1983 claim against a named defendant." (*Id.* at 15.) The court nevertheless dismissed the action "without prejudice to Keen's opportunity to file a fourth amended complaint." (*Id.*) Still, the court cautioned Plaintiff that, to be considered, Plaintiff must file a motion to reopen and a proposed fourth amended complaint within 30 days and instructed Plaintiff that the proposed complaint "must stand alone, without reference to or reliance on any previously filed complaint, amendment, additional evidence or other document, . . . must comply with the Federal Rules of Civil Procedure, must clearly identify each defendant and each claim against each defendant, and must provide all of the facts that Keen wants the court to consider against each defendant." (*Id.* at 16.) Finally, the court warned Plaintiff that it would screen any proposed complaint in accordance with 28 U.S.C. § 1915(e)(2)(B) before directing any defendant to respond. (*Id.*)

Two months later, following his transfer to a different facility, Plaintiff informed the court that he had received the opinion and order dismissing this action several weeks after it was filed and asked the court for an extension of time to file a motion for reconsideration and to reopen his case. (*See* Pl.'s Mot. for Extension of Time [ECF No. 167].) On May 24, 2024, the court granted Plaintiff's motion for extension of time and directed him "to file any motion

to reopen with a proposed fourth amended complaint, subject to the requirements noted in the court's March 29, 2024 memorandum opinion and order" within 30 days. (Oral Order, May 24, 2024 [ECF No. 168].) Plaintiff timely filed a motion to reopen the case and attached a proposed fourth amended complaint. (*See* Pl.'s Mot. to Reopen [ECF No. 170]; Proposed Fourth Am. Compl. [ECF No. 170-1].) His motion is ripe for review.

## II.

Plaintiff's proposed fourth amended complaint names eight Defendants—Steve Clear, Cpt. Josh Hayes, Lt. Steve Gullet, Cpl. Nancy Delano, Emma Starnes, Officer Lane, D. Edmonds, and A. Hall—all of whom were named as Defendants in his third amended complaint. (*See* Proposed Fourth Am. Compl. at 1.) His fourth amended complaint raises the same failure-to-protect and loss-of-evidence claims contained in his previous complaint. (*Id.* at 3.)

### A. Failure-to-Protect Allegations

In support of Plaintiff's failure-to-protect claim, he alleges that, on September 8, 2020, around 1:00 p.m., he was seen by a doctor at Haysi for an unnamed purpose. (*Id.* at 8.) According to Plaintiff, the doctor told him that "all he could do was advise that [Plaintiff] be 'transferred again.'" (*Id.*) At 2:00 p.m. that same day, Cpl. Stepp—who is not named as a defendant in the proposed fourth amended complaint—told Plaintiff to "leave everything in [his] cell other than [his] personal stuff." (*Id.*) Plaintiff implies, though does not clearly state, that he was transferred to Duffield that same day. (*Id.*)

Plaintiff alleges that, presumably upon their arrival at Duffield, Stepp had "a 'very private' chat with the booking officer." (*Id.*) He also alleges that he was held in booking until

approximately 1:30 a.m. (*Id.*) At some point on September 9, 2020, Plaintiff was placed in special housing unit ("SHU") 8B. (*See id.*) Around 5:00 p.m. that day, Plaintiff claims that all doors in the SHU were "buzzed" open except his. (*Id.*) He alleges that his cell door was buzzed open a few minutes after the others and claims these few minutes were "enough time" for other unidentified inmates "to gather and plan." (*Id.*) After his door was buzzed open, two other inmates came into his cell and "beat [him] up" causing injuries to his nose, ribs, and left eye. (*Id.*) Plaintiff is unaware of who the other inmates were or why they attacked him and alleges that neither he nor any facility staff took any further action against the inmates. (*Id.*) He also claims that unidentified "staff" "stood by and watched [the attack] happen" and that, after, "staff" entered his cell. (*Id.*)

Plaintiff seeks to hold Defendants Clear, Hayes, Delano, Lane, Edmonds, and Hall liable for failing to protect him from the attack of the other inmates. (*Id.* at 9–11.) He alleges that Clear, as superintendent of the Southwest Virginia Regional Jail Authority, "is legally responsible for the operation of Duffield Regional Jail and the welfare of all inmates in that jail" and that Clear was "well aware of the history of the ongoing . . . , well documented violence in the SHU (special housing unit) especially of the attacking inmates." (*Id.* at 9.) He claims that Clear knew that placing Plaintiff "in those conditions" created a substantial risk of harm to Plaintiff and that Clear failed to take reasonable measures to prevent that harm. (*Id.*) Finally, he claims that Clear has "allowed [a] policy" of failing to keep administratively segregated prisoners, like Plaintiff himself, separated from "violent inmates" and that his policy ultimately resulted in Plaintiff's injuries. (*Id.*)

Plaintiff alleges that Defendant Hayes is liable because he "is in charge of all things security in Duffield Regional Jail (DRJ)" including "the housing and welfare of all inmates." (*Id.* at 10.) Plaintiff claims that Hayes "had actual knowledge . . . of the ongoing 'custom' of violence in the 'SHU' especially toward [sex offenders]" and that Hayes "deliberately acted [with] indifference by ignoring the obvious ongoing and serious danger those conditions entailed." (*Id.* (also alleging that Hayes "refused to implement measures to prevent the 'still' ongoing substantial risk of serious harm").) Plaintiff further claims that Hayes violated the Eighth Amendment "by authorizing th[e] misconduct of his employees" and failing to discipline the inmates who attacked him. (*Id.*)

Plaintiff claims Defendant Delano is liable because, while working in "master control," which he alleges "controls the 'doors' to the entire jail," she "intentionally hindered" the responding officers' intervention in the attack on Plaintiff by not unlocking the doors after "the call for help . . . went out." (*Id.*) He alleges Delano "recklessly stood by and watched [him] being injured." (*Id.*)

Finally, Plaintiff alleges that Defendants Lane, Edmonds, and Hall are liable because they were working in "max housing" the day of the attack and were "placed in charge of all things therein, including [the] safety and well being of all inmates in the 'SHU.'" (*Id.* at 11.) Plaintiff claims that Lane, Edmonds, and Hall had keys to the doors of the SHU and "stood by the windows and watched" after the "call" went out, rather than intervening to stop the attack on Plaintiff. (*Id.*) Plaintiff further alleges that Lane, Edmonds, and Hall "deliberately hindered other responding officers . . . from entering the 'SHU' to stop the attack and intentionally waited several minutes to enter afterwards." (*Id.*)

## B. Loss of Evidence

Plaintiff next alleges that, on September 25, 2020, Plaintiff gave Defendant Starnes[1] "legal documents and evidence" seemingly related to his failure-to-protect claims and/or his criminal case so that she could make copies of them. (*Id.* at 3; *see id.* at 4.) He claims that Starnes subsequently "deprived" him of those documents. (*Id.* at 3.) He alleges that the following documents were lost:

- "incident reports of similar incidents of other inmates";

- "witness statements of nonattacking inmates who watched and were present during 9-9-20 incident";

- "written inquir[ie]s and grievance and original 1983 form for this suit";

- a "motion to dismiss criminal [*sic*] for lack of speedy trial";

- "[l]etters from Alexis Keen stating that she wanted the charges against me dropped[,] that her interview was taken out of context[,] and how she did not want anything to do with this[,] and that she is sorry how it went and that she loves and misses me and wants me to come home";

- "2 notices of confi[s]cation from Haysi Jail of letters from Sheridan Owens for caryon [*sic*] drawings";

- "[l]etters from Sheridan apologizing for fibbing and going into detail about whey she said the things she did[,] why she was mad at me . . .[,] what she actually said, updates on family[,] etc.";

- "[l]etter from Sheridan stating Abby approached her in school saying how she lied on me [*sic*] . . . and what Sheridan remembers from the original day and what she . . . told her mom . . . that day";

- "[l]etter from Sheridan stating she wants things back the way they used to be, she (they all) misses me and being in a family. How her grandmother . . . treats her

---

[1] Plaintiff indicates that Defendant Starnes has since changed her name to "Hartsock," and intermittently refers to either name in his fourth amended complaint. (*See, e.g.*, Proposed Fourth Am. Compl. at 4.)

>   compared to the others . . . [,] and she will have to stop writing and deny if she get[s] caught by grandmother or mother"; and
>
> - "non[-]case[-]related statements for lawsuit on cruel and unusual punishment and failure to protect, officer induced fight claim."

(*Id.* at 4, 6–7.) Plaintiff alleges, without offering any additional information concerning the relevance of the documents, that they were "irreplaceable, very necessary, tools that would have substantiated" his defense in his criminal trial and that as a result of the deprivation he lost his criminal case, lost "the ability to prove [his] innocence," and "could not properly prepare for trial [or] receive a fair trial." (*Id.* at 3.) He also claims Starnes lost evidence pertaining to this case in retaliation for his filing suit, even though he did not file this action until two months after Starnes allegedly deprived him of his documents. (*Id.* at 4, 7; *see also* Compl. [ECF No. 1] (filed November 20, 2020).)

Plaintiff claims that Defendants Gullet and Hayes are also responsible for his losses because they were "part of the grievance procedure" and "deliberately fail[ed]" to take action necessary to relocate and return his documents. (*Id.* at 3.)

### III.

Under the Prison Litigation Reform Act, in cases in which a court authorizes the commencement, prosecution, or defense of a suit without the prepayment of fees, notwithstanding any subsequent full or partial payment of the filing fee, "the court shall dismiss the case at any time if the court determines that . . . the action . . . is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In assessing whether a prisoner complaint fails to state a claim for purposes of § 1915(e)(2)(B)(ii), the court applies the same standard as under Federal Rule of Civil Procedure 12(b)(6). *Hodges v. Meletis*, 109 F.4th 252, 259 (4th Cir. 2024). The court therefore accepts all well-pleaded factual allegations as true and draws all reasonable inferences in Plaintiff's favor and asks whether those allegations state a plausible claim for relief. *See id.* (citations omitted). And when a prisoner files his complaint *pro se*, the court liberally construes the allegations in his favor and should not dismiss his claims unless "it appears certain that [he] cannot prove any set of facts in support of his claim entitling him to relief." *Shaw v. Foreman*, 59 F.4th 121, 127 (4th Cir. 2023) (internal citation omitted). Similarly, when an action implicates civil-rights interests, the court "must be especially solicitous of the wrongs alleged" and "must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." *Id.* (internal citation omitted).

## IV.

Plaintiff's proposed fourth amended complaint has not corrected the deficiencies that existed in his prior pleadings.

### A. Failure-to-Protect Claims

As in his previously dismissed complaint, Plaintiff's allegations are too vague and conclusory to state a colorable § 1983 claim based on Defendants failure to protect him from the September 8, 2020 attack by the unidentified inmates.

"The Fourteenth Amendment Due Process Clause protects pretrial detainees from 'governmental action' that is not 'rationally related to a legitimate nonpunitive governmental

- 8 -

purpose' or that is 'excessive in relation to that purpose.'" *Short v. Hartman*, 87 F.4th 593, 608–09 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 2631 (2024) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)). Following the Supreme Court's decision in *Kingsley* and the Fourth Circuit's decision in *Short*, pretrial detainees may state failure-to-protect claims based on a purely objective basis.[2] *See Hammock v. Andoh*, No. 22-7159, 2024 WL 33694, at *1 (4th Cir. Jan. 3, 2024) (explaining that, following *Kingsley* and *Short*, "a pretrial detainee's failure-to-protect claim must be evaluated under an entirely objective standard"); *Carmona v. Martin*, No. 23-6930, 2024 WL 4490695, at *2 (4th Cir. Oct. 15, 2024) (applying *Short*'s purely objective standard to a failure-to-protect claim). To state such a claim, Plaintiff must allege that Defendants "exposed him to an objectively substantial risk of serious harm . . . that a reasonable official in [Defendants'] position would have appreciated." *Carmona*, 2024 WL 4490695, at *2 (citations and internal quotation marks omitted). This requires showing that "a reasonable official in the circumstances would have appreciated the high degree of risk involved" in his or her actions or inaction, "making the consequences of [the official's] conduct obvious." *Id.* (quoting *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)).

Even under this purely objective test, Plaintiff's allegations do not support viable failure-to-protect claims. Here, as in Plaintiff's third amended complaint, his claims against

---

[2] In the court's prior opinion, it evaluated Plaintiff's claims under the objective and subjective test applicable to Eighth Amendment failure-to-protect claims of convicted prisoners. For years, the Fourth Circuit applied that same test to Fourteenth Amendment failure-to-protect claims brought by pretrial detainees. *See Short*, 87 F.4th at 608–09. But more recent Fourth Circuit decisions, albeit unpublished ones, have clarified that Fourteenth Amendment claims do not require proof of the defendant's subjective knowledge of a risk to the plaintiff, unlike claims brought under the Eighth Amendment. *See Hammock*, 2024 WL 33694, at *1; *Carmona*, 2024 WL 4490695, at *2.

Defendants Clear, Hayes, Delano, Lane, Edmonds, and Hall are based on general allegations and the "legal responsibility" he claims accompanied their positions within Duffield or the Southwest Regional Jail Authority and lack specific factual allegations necessary to show their actions were objectively unreasonable. (*See* Proposed Fourth Am. Compl. 9–11.)

### i. Claims Against Defendants Clear and Hayes

Plaintiff alleges Clear and Hayes are responsible for his injuries because their positions made them widely responsible for the welfare and safety of all inmates at Duffield and they were generally aware of the "history" of "violence" within the SHU housing Plaintiff. (*See id.* at 9–10.) But Plaintiff has failed to allege facts suggesting that a reasonable officer in either Clear's or Hayes's position would have recognized the risk of the harm that caused Plaintiff's injuries. *See Carmona*, 2024 WL 4490695, at *2. Specifically, although Plaintiff claims that their positions made Clear and Hayes aware of past instances of inmate-on-inmate attacks, Plaintiff does not allege any facts implying that they were or should have been aware that a defect in the functioning of the cells' locking mechanism put Plaintiff himself at risk of harm from other, unidentified inmates, whose motives Plaintiff admits were unknown. Despite Plaintiff's allegations that Clear and Hayes ignored the general risk posed to Plaintiff as an administratively segregated inmate, nothing in his proposed fourth amended complaint suggests that these Defendants should have been aware of the risk that he would be attacked by the inmates who harmed him. *See Carmona*, 2024 WL 4490695, at *2 (concluding pretrial detainee failed to establish his Fourteenth Amendment failure-to-protect claim, even though he complained to prison officials that he would be attacked if placed in a particular cell block because "when he was questioned about this alleged threat, [he] could not identify any specific

persons who intended to harm him"); *Jackson v. Wolfe*, Civ. No. MJM-22-3130, 2025 WL 522864, at *4 (D. Md. Feb. 18, 2025) (dismissing failure-to-protect claim where there was no evidence that the officials "either knew or should have known that the detainees who attacked [the plaintiff] presented a risk to [his] safety").

Additionally, neither Clear nor Hayes can be liable based only on their positions of authority within the jail. *See Ashcroft v. Iqbal*, 556 U.S. 662 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the officials own individual actions, has violated the Constitution"). And Plaintiff has not offered sufficient allegations to establish their liability as supervisors. A plaintiff can only maintain a § 1983 claim against a supervisor if he alleges (1) "that the supervisor had actual or constructive knowledge that his subordinates were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to plaintiff," (2) "the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices," and (3) "there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Green v. Beck*, 539 F. App'x 78, 80 (4th Cir. 2013) (internal quotation marks omitted). Plaintiff has not identified any of Clear or Hayes's supervisees, let alone alleged that they engaged in conduct that unreasonably risked violating his constitutional rights. (*See* Proposed Fourth Am. Compl. 9–10.) Accordingly, the proposed fourth amended complaint does not state failure-to-protect claims against Clear or Hayes.

### *ii. Claims Against Defendants Delano, Lane, Edmonds, and Hall*

Plaintiff's claims against Defendants Delano, Lane, Edmonds, and Hall fare no better. Plaintiff alleges that these Defendants "stood by" and "watched" after a "call for help" went out and deliberately hindered the intervention of other officers, at least for a few minutes after the call issued. (*Id.* at 10–11.) But the proposed fourth amended complaint lacks sufficient factual allegations for the court to conclude that their actions were objectively unreasonable.

It is well established that "objective reasonableness" is a highly fact intensive inquiry. *See Castro*, 833 F.3d at 1071 ("[T]he defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn on the facts and circumstances of each particular case.'") (quoting *Kingsley*, 576 U.S. at 397). Indeed, to state a plausible claim for failure to protect, the allegations must establish that "a reasonable official *in the circumstances* would have appreciated the high degree of risk involved." *Carmona*, 2024 WL 4490695, at *2 (quoting *Castro*, 833 F.3d at 1071) (emphasis added). Even under the objective standard applicable to Fourteenth Amendment claims, "the defendant's knowledge of the *factual circumstances* informs whether a reasonable officer under the same circumstances would have developed subjective or personal awareness of the *risk of harm* to the plaintiff." *Davis v. Rook*, 107 F.4th 777, 780 (7th Cir. 2024) (emphasis in original) ("[A]s the Supreme Court put the point in *Kingsley*, the district court must assess the objective reasonableness of the defendant's action or inaction 'from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight.'") (quoting 576 U.S. at 397). The court cannot evaluate the reasonableness of a defendant's actions, or what should have been obvious to that defendant, when a complaint lacks the necessary factual detail to do so. *Cf. Franklin v. Agnor*, No. 7:24-

CV-00204, 2025 WL 262354, at *3 (W.D. Va. Jan. 22, 2025) (dismissing Fourteenth Amendment excessive-force claim where the plaintiff failed to offer sufficient factual details to allow the court to assess the reasonableness of the officer's actions); *Aliff v. W. Va. Reg'l Jail & Corr. Facility Auth.*, No. 2:15-CV-13513, 2016 WL 5419444, at *7 (S.D.W. Va. Sept. 26, 2016) (explaining that because "objective reasonableness turns on the facts and circumstances of each particular case," it "cannot be judged in a vacuum").

Here, Plaintiff's allegations that Delano, Lane, Edmonds, and Hall waited to enter and/or delayed others from entering the SHU for "several minutes" after an unexplained "call for help" sounded do not provide an adequate picture of the surrounding circumstances. The court lacks any information concerning what the "call for help" entailed, the protocol for entering the SHU, whether Defendants were physically able to enter or allow others to enter the SHU (especially in light of Plaintiff's allegations that the locking mechanism of the doors had malfunctions mere minutes before), and whether Defendants were officers tasked with intervening in the altercation or whether others were charged with that task. Instead, Plaintiff's claims against Delano, Lane, Edmonds, and Hall are based only on vague allegations concerning their proximity to and responsibilities toward the SHU on the day of the incident. (*See* Proposed Fourth Am. Compl. 10–11.) But to state a claim for relief, Plaintiff must show more than a mere possibility that Defendants acted unreasonably. *See Twombly*, 550 U.S. at 557. Even construing the few allegations in the proposed fourth amended complaint in Plaintiff's favor, the court cannot determine whether reasonable officials in these Defendants' positions would have acted differently. Because Plaintiff has not "nudged [his] claims across the line

from conceivable to plausible," *Twombly*, 550 U.S. at 570, he has not stated a claim upon which relief can be granted.

### B. Loss-of-Evidence Claims

As the court explained in its prior opinion:

> The Due Process Clause of the Fourteenth Amendment guarantees prisoners the right to access the courts. *Pink v. Lester*, 52 F.3d 73, 76 (4th Cir. 1995). To state such a claim, the inmate must allege that he suffered an adverse consequence resulting from the interference. *Rountree v. Clarke*, No. 7:11cv572, 2015 U.S. Dist. LEXIS 28511, at *10 (W.D. Va. Mar. 9, 2015) (citing *White v. White*, 886 F.2d 721, 724 (4th Cir. 1989)). An adverse consequence—also referred to as "actual injury"—occurs when the plaintiff's "nonfrivolous claim" is frustrated or impeded by the deprivation of the necessary tools to pursue that claim. *Lewis v. Casey*, 518 U.S. 343, 351 (1996); *Christopher v. Harbury*, 536 U.S. 403, 415–16 (2002). Mere negligent actions that interfere with an inmate's litigation efforts are not actionable. *Pink*, 52 F.3d at 75–76.

(Mem. Op., Mar. 29, 2024, at 9–10.)

Plaintiff's proposed fourth amended complaint still fails to demonstrate an actual injury caused by the loss of these documents. Although Plaintiff offers general descriptions of the documents he claims were lost, he does not state which claims or defenses would have been supported by those documents. This is fatal to any claim based on the interference with his access to courts because "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher*, 536 U.S. at 415–16 ("Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant."). Here, Plaintiff makes only vague references to a criminal case and this action. But to adequately state a claim, the underlying claim or defense must be "described well enough to apply the 'nonfrivolous'

- 14 -

test and to show that the 'arguable' nature of the underlying claim is more than hope." *Id.* at 416. Plaintiff's failure to describe the precise claims or defenses to which the lost documents are allegedly relevant, as well as the nature of their relevance, prevents the court from finding that the loss impeded any nonfrivolous claim. Accordingly, Plaintiff has not stated a plausible claim for relief against any Defendant based on the loss of the documents listed in the proposed fourth amended complaint.

## IV.

Even considering the additional allegations set forth in Plaintiff's proposed fourth amended complaint, he has failed to state a plausible claim for relief against any Defendant. The court will therefore **DENY** Plaintiff's motion to reopen this case (ECF No. 170). And because this case will remain closed, the court will also **DENY** Plaintiff's other pending motions related to the prosecution of this case **as moot**. (*See* Pl.'s Mot. to Appoint Counsel [ECF No. 171]; Pl.'s Mot. to Appoint Counsel and for Status [ECF No. 172]; Pl.'s Mot. to Amend [ECF No. 173].)

The Clerk is **DIRECTED** to send copies of this memorandum opinion and the accompanying order to the parties.

**ENTERED** this 24th day of March, 2025.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE